UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **ALAINA HAMPTON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 18 CV 2069 |
| v. | ) | |
| | ) | **JURY DEMAND** |
| **DEMOCRATIC PARTY OF ILLINOIS,** | ) | |
| **FRIENDS OF MICHAEL J. MADIGAN**, | ) | |
| **DEMOCRATIC MAJORITY and,** | ) | |
| **13th WARD DEMOCRATIC ORGANIZATION**, ) | | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Alaina Hampton ("Ms. Hampton"), by and through her attorneys, Shelly B. Kulwin, Jeffrey R. Kulwin and Rachel A. Katz, KULWIN, MASCIOPINTO & KULWIN, LLP, and for her first amended complaint against Defendants Democratic Party of Illinois, Friends of Michael J. Madigan, Democratic Majority and 13th Ward Democratic Organization, states as follows:

## INTRODUCTION

1.      Between 2012 and 2017, Ms. Hampton worked successfully as a political staffer and campaign manager for the defendant political/candidate committees controlled by Illinois House of Representatives Speaker Michael J. Madigan ("the Madigan Defendants").

2.      While working for the Madigan Defendants, Ms. Hampton was subjected to severe and persistent sexual harassment by her supervisor Kevin Quinn.

3.      Ms. Hampton reported to the Madigan Defendants, and to Michael J. Madigan directly, Kevin Quinn's conduct and the sexually hostile work environment she was being and/or

had been forced to endure. Ms. Hampton's reports about Kevin Quinn's misconduct were disregarded and ignored.

4.      The Madigan Defendants retaliated against Ms. Hampton for asserting her right to be free from unlawful harassment and a sexually hostile work environment by, among other ways, failing to hire her to work as a political consultant for the 2018 campaign cycle.

5.      The Madigan Defendants had no legitimate reason for failing to hire and/or allow Ms. Hampton to work as a political staffer and/or campaign manager and the stated reasons for their employment actions were pretexts to hide unlawful employment actions as alleged below.

6.      Ms. Hampton brings this action to redress the discriminatory and retaliatory acts taken by the Madigan Defendants for opposing and reporting sexual harassment, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

7.      In direct violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*., the Madigan Defendants engaged in the discriminatory and retaliatory acts described in the charges of discrimination attached hereto. The Madigan Defendants' discriminatory and retaliatory conduct, as aforesaid, was done with malice and/or with reckless indifference to Ms. Hampton's rights.

8.      As a result of the Madigan Defendants' discriminatory and retaliatory conduct, Ms. Hampton has suffered injury to her career as well as other injuries for which she is entitled to actual, compensatory and punitive damages, as well as equitable relief pursuant to the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over Count I pursuant to, among others, 28 U.S.C. §§ 1331 and 1343.

2

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Ms. Hampton's claims arise out of incidents that occurred within the Northern District of Illinois.

11.     Ms. Hampton brings her claims subsequent to the timely filing of charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") in which the Madigan Defendants were named as respondents, true and correct copies of which are attached hereto as Exhibits 1 & 2 and incorporated herein by reference.

12.     Ms. Hampton files suit pursuant to Right to Sue Letters issued by the EEOC and within the statutory time requirements, true and correct copies which are attached hereto as Exhibit 3 and incorporated herein by reference.

## PARTIES

13.     Plaintiff Alaina Hampton ("Ms. Hampton") resides in Illinois.

14.     Defendant Democratic Party of Illinois ("DPI") is a political party committee with the purpose of electing Democratic candidates to public and political offices in the State of Illinois. Illinois House Speaker Michael J. Madigan ("Speaker Madigan"), is, and at all relevant times was, the Chairman of DPI.

15.     Defendant Friends of Michael J. Madigan ("Friends of Madigan") is a candidate committee with the purpose of electing Speaker Madigan. Speaker Madigan, is, and at all relevant times was, the Chairman of Friends of Madigan.

16.     Defendant Democratic Majority is a political party committee with the purpose of electing candidates to the Illinois House.  Speaker Madigan is, and at all relevant times was, the Chairman of the Democratic Majority.

17.     Defendant 13th Ward Democratic Organization ("13th Ward Organization") is a political party committee with the purpose of supporting the political goals of members of the 13th

Ward. Speaker Madigan is, and at all relevant times was, the Chairman of the 13th Ward Organization. Marty Quinn ("Alderman Quinn") is, and at all relevant times was, the Alderman for the City of Chicago's 13th Ward. Alderman Quinn and Speaker Madigan share office space for their respective ward and district offices (hereafter, "13th Ward Office").

18.     As Chairman of the Madigan Defendants, Speaker Madigan controls the accounts of each campaign fundraising entity and is able to transfer money from one account to another to support democratic campaigns and candidates. Funds from the Madigan Defendants' accounts are used, at various times, to pay the salaries of their political campaign staffers. Based on information and belief, as Chairman of the Madigan Defendants, Speaker Madigan also controls their employment decisions, including whether they employ and/or provide funds to any specific campaign to employ any individual as a paid staffer for any specific political campaign.

## FACTS

19.     In or around August, 2012, after graduation from college with a degree in political science, Ms. Hampton began working for the Madigan Defendants.

20.     From approximately August, 2012, through approximately March, 2016, Ms. Hampton worked on, managed and ran several successful and notable campaigns for the Madigan Defendants, including, among others, Illinois State Representative Sue Scherer, Illinois State Representative Kathleen Willis, Alderman Deb Mell, and Illinois State Representative Juliana Stratton. Ms. Hampton also worked on Speaker Madigan's legislative staff. Throughout this time, Ms. Hampton's supervisor was Alderman Quinn.

21.     After successfully running Juliana Stratton's 5th District campaign, Alderman Quinn and Speaker Madigan informed Ms. Hampton that they wanted her to become a more permanent member of the Democratic Organization and therefore arranged for Ms. Hampton to

work at Chicago Heights Economic Development Corporation. As part of the arrangement, Ms. Hampton was expected to also work for the Madigan Defendants, which she did, from approximately July, 2016, through April, 2017.

22.     From approximately July, 2016, through December, 2016, Ms. Hampton was assigned to work on three separate democratic campaigns. Ms. Hampton received a salary for her work on the campaigns from Defendant Friends of Madigan and Defendant Democratic Majority. *See* Exhibit 1, attachment Exhibit B & Exhibit 2, attachment Exhibit B, which are attached hereto and incorporated herein by reference.

23.     Ms. Hampton's direct supervisor was Kevin Quinn. Kevin Quinn, at all relevant times, was employed by the Madigan Defendants as a state government and political staffer and received a salary from Friends of Madigan. Kevin Quinn is widely known as a high-ranking political operative for the Madigan Defendants and Speaker Madigan.  Kevin Quinn is Alderman Quinn's brother and, at all relevant times, worked out of Alderman Quinn's and Speaker Madigan's 13th Ward Office.

24.     Alderman Quinn, also served as Ms. Hampton's supervisor.  During the relevant time period, Alderman Quinn also received a salary from Defendant Friends of Madigan.

25.     On a daily basis, Kevin Quinn was responsible for directing Ms. Hampton to any one of the three campaigns to which Ms. Hampton was assigned. Kevin Quinn is 15 years older than Ms. Hampton and married with children.

26.     Beginning in or around August, 2016, Kevin Quinn began to subject Ms. Hampton to severe and pervasive sexual harassment by pursuing Ms. Hampton to have a romantic and sexual relationship with him.

5

27.     Kevin Quinn's sexual harassment continued through approximately February, 2017.

28.     Specifically, during this five-month period, Kevin Quinn called Ms. Hampton repeatedly, late at night, and sent her dozens of text messages asking her out, telling her she was "smoking hot" and urging her to go out with him. *See* Exhibit 1, attachment Exhibit C & Exhibit 2, attachment C, which are attached hereto and incorporated herein by reference.

29.     Kevin Quinn's unwelcomed and sexually harassing text messages continued on a regular basis despite the fact that Ms. Hampton repeatedly told Kevin Quinn that she wanted to keep their relationship strictly professional and that she did not want to be involved with him in a romantic or sexual relationship. *Id.*

30.     Notwithstanding Ms. Hampton's repeated statements that she wished to maintain a professional relationship, Kevin Quinn refused to take "no" for an answer.

31.     Kevin Quinn's sexually harassing conduct was objectively and subjectively severe and pervasive so as to unreasonably interfere with Ms. Hampton's health, and work performance so as to create an intimidating, hostile and offensive working environment.

32.     In approximately mid-February, 2017, Ms. Hampton reported Kevin Quinn's sexual advances and harassment to her and Kevin Quinn's supervisor, Alderman Quinn.

33.     During her meeting with Alderman Quinn, Ms. Hampton reported Kevin Quinn's sexually harassing conduct and personally read to Alderman Quinn examples of the harassing text messages that Kevin Quinn had sent her throughout the prior five-month period.

34.     Alderman Quinn, however, failed to take corrective or remedial action.

35.     Instead, Alderman Quinn informed Ms. Hampton that she could "block" Kevin Quinn's phone number on her phone and that Ms. Hampton would no longer be required to report

to Kevin Quinn directly. Despite this alleged assurance, Alderman Quinn stated that he wanted Ms. Hampton's next assignment for the Madigan Defendants to be working as a precinct officer. However, if Ms. Hampton worked as a precinct officer, she would again be forced to work with Kevin Quinn, the very supervisor who was sexually harassing her.

36.     In or around April, 2017, Ms. Hampton was constructively discharged and forced to stop working for the Madigan Defendants because she could no longer suffer the crippling fear and anxiety she experienced having to work with Kevin Quinn.

37.     In November, 2017, Ms. Hampton reported the sexual harassment directly to Speaker Madigan.

38.     Specifically, on or about November 1, 2017, Ms. Hampton wrote a letter to Speaker Madigan to explain the circumstances surrounding her departure as she did not believe, based on her conversation with Speaker Madigan on or about April 17, 2017, at a political fundraiser that Ms. Hampton hosted for Juliana Stratton, that Alderman Quinn had informed Speaker Madigan of what had transpired. Ms. Hampton contacted Speaker Madigan with the expectation that, once informed of the true circumstances of why she stopped working for the Madigan Defendants, Speaker Madigan would allow her to return to work for the upcoming campaigns in her former role.

39.     Speaker Madigan did not respond to Ms. Hampton's letter or take any corrective or remedial action against Kevin Quinn.

40.     Instead, on or about November 13, 2017, Heather Wier Vaught ("Ms. Vaught"), a private attorney who serves part time as special counsel to Speaker Madigan and the Madigan Defendants,  called Ms. Hampton and scheduled a meeting with her for November 15, 2017 at a

7

coffee shop. *See* Exhibit 1, attachment Exhibit E & Exhibit 2, attachment E, which are attached hereto and incorporated herein by reference.

41.     During the November 15, 2017 meeting, which lasted no more than one hour, Ms. Vaught minimized Kevin Quinn's sexual harassment, told Ms. Hampton that she was not sexually harassed or subjected to a sexually hostile work environment because she was not an "employee", and flippantly accused Ms. Hampton of wanting to get a "front page newspaper story" and money.

42.     During the meeting, Ms. Hampton provided Ms. Vaught with hard copies of all the sexually harassing text messages she received from Kevin Quinn and asked Ms. Vaught to share them with Speaker Madigan. Ms. Hampton also asked about being hired by the Madigan Defendants to work on upcoming campaigns in her former role.  Ms. Vaught promised to follow up with Ms. Hampton, but never did.

43.     On or about December 12, 2017, Ms. Hampton sent Ms. Vaught a text message asking Ms. Vaught if she thought it was okay if she contacted Alderman Quinn directly to discuss assisting him and the Madigan Defendants on the 5th District race, as she had previously successfully managed Juliana Stratton's campaign in that District. *See* Exhibit 1, attachment Exhibit E & Exhibit 2, attachment E, which are attached hereto and incorporated herein by reference.

44.     In response, Ms. Vaught told Ms. Hampton she would call her the next day to discuss it, however, she never did.  *Id.*

45.     On or about January 15, 2018, Ms. Hampton again reached out to Ms. Vaught via text message. *Id.*  Ms. Vaught responded that she would contact Ms. Hampton later that day but never did. *Id.*

46.     On or about January 15, 2018, Ms. Hampton contacted Alderman Quinn directly regarding opportunities to work for the Madigan Defendants on upcoming campaigns as she had so successfully done in the past. Alderman Quinn did not respond.

47.     Instead, immediately after she contacted Alderman Quinn, Ms. Hampton learned that she would not be hired by the Madigan Defendants and the reason she would not be hired was because the Madigan Defendants were not involved in the 5th District race.

48.     Ms. Hampton subsequently learned that the reason provided by the Madigan Defendants for not hiring her was untrue. In fact, Ms. Hampton learned that the Madigan Defendants selected another individual to work on the 5th District campaign – the same campaign she had sought to work on, on the Madigan Defendants' behalf.

49.     Between February, 2017, and February, 2018, despite Ms. Hampton's reports to Speaker Madigan, the Madigan Defendants, and Alderman Quinn, Kevin Quinn continued to work in a supervisory capacity for the Madigan Defendants.

50.     At no time between November, 2017, when Ms. Vaught first contacted Plaintiff on behalf of the Madigan Defendants, and February, 2018, when the Madigan Defendants terminated Kevin Quinn, did Ms. Vaught or the Madigan Defendants inform Ms. Hampton that they were conducting an investigation into her allegations of sexual harassment against Kevin Quinn.

51.     Upon information and belief, the Madigan Defendants have ignored and/or disregarded other reports of sexual harassment of female employees and volunteers working for the Madigan Defendants.

52.     On or about February 11, 2018, Ms. Hampton was interviewed by the Chicago Tribune about the sexual harassment and hostile work environment she experienced working for the Madigan Defendants.

53.     The next day, the Madigan Defendants announced publicly that they had terminated Kevin Quinn.

## COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e *et seq.*

(*Retaliation*)

54.     Ms. Hampton repeats, realleges and incorporates by reference paragraphs 1- 53 as if fully stated herein.

55.     Ms. Hampton at all times pertinent hereto was a person protected by the provisions of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

56.     The Madigan Defendants at all times relevant hereto, were employers as defined by 42 U.S.C. § 2000e(b).

57.     During the course of her employment, Ms. Hampton was subjected to severe and pervasive sexual harassment at the hands of her supervisor Kevin Quinn.

58.     Kevin Quinn's sexual harassment was objectively and subjectively severe and pervasive so as to unreasonably create a hostile and intimidating work environment that interfered with Ms. Hampton's ability to do her job.

59.     Ms. Hampton engaged in protected activity by reporting and opposing Kevin Quinn's sexual harassment to her supervisor Alderman Quinn, Speaker Madigan and the Madigan Defendants.

60.     Ms. Hampton engaged in protected activity by filing charges of discrimination against the Madigan Defendants.

61.     Ms. Hampton was subjected to a materially adverse employment action when the Madigan Defendants failed to hire her to work during the 2018 campaign cycle.

62. In direct violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2200e *et seq.*, the Madigan Defendants retaliated against Ms. Hampton for reporting and opposing sexual harassment by, among other ways, failing to hire her and/or allow her to continue working for them in her former role for which she was qualified.

63. The Madigan Defendants' discriminatory and retaliatory conduct, as alleged herein, was done with malice and/or with reckless indifference to Ms. Hampton's rights.

64. As a result of the Madigan Defendants' discriminatory and retaliatory conduct, Ms. Hampton has suffered injury to her career and her reputation, as well as other injuries for which she is entitled to actual, compensatory and punitive damages, as well as equitable relief, pursuant to the Civil Rights Act of 1964, 42 U.S.C. §§ 2200e *et seq*.

WHEREFORE, Plaintiff, Alaina Hampton, respectfully prays for judgment against the Madigan Defendants as follows:

A. Order the Madigan Defendants to make Plaintiff Alaina Hampton whole by entering an order awarding Plaintiff appropriate actual, compensatory and punitive damages as determined by the fair and enlightened conscience of a jury as well as any affirmative relief necessary to eradicate the effects of the Madigan Defendants' unlawful employment practices;

B. Award Plaintiff Alaina Hampton all reasonable costs and attorney's fees incurred in connection with this action;

C. Award Plaintiff Alaina Hampton pre-judgment and post-judgment interest in an amount to be determined at the time of trial; and

D. Grant any other relief provided for by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. and/or any other relief as this Court deems just, necessary and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS**

Respectfully submitted,

KULWIN, MASCIOPINTO & KULWIN, LLP


By: _____*/s/ Shelly B. Kulwin*_____
                    One of the Attorneys for Plaintiff


Shelly B. Kulwin
Jeffrey R. Kulwin
Rachel A. Katz
161 N. Clark Street, Suite 2500
Chicago, Illinois 60601
312.641.0300 (Tel.)
312.855.0350 (Fax)
*Attorneys for the Plaintiff, Alaina Hampton*