IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALAINA HAMPTON, ) | |
| ) | Case No. 18 CV 2069 |
| Plaintiff, ) | |
| ) | Judge: Sara L. Ellis |
| v. ) | |
| ) | Magistrate Judge: Maria Valdez |
| DEMOCRATIC PARTY OF ILLINOIS, ) | |
| FRIENDS OF MICHAEL J. MADIGAN, ) | **TRIAL BY JURY DEMANDED** |
| DEMOCRATIC MAJORITY and 13TH WARD ) | |
| DEMOCRATIC ORGANIZATION, ) | |
| ) | |
| Defendants. ) | |

## **DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED COMPLAINT**

Defendants Democratic Party of Illinois, Friends of Michael J. Madigan, Democratic Majority and 13th Ward Democratic Organization[1], by and through their attorneys, Aimee E. Delaney and James M. Lydon of HINSHAW & CULBERTSON LLP, and for their Answer and Affirmative Defenses to Plaintiff Alaina Hampton's ("Plaintiff") First Amended Complaint, state as follows:

### INTRODUCTION

1. Between 2012 and 2017, Ms. Hampton worked successfully as a political staffer and campaign manager for the defendant political/candidate committees controlled by Illinois House of Representatives Speaker Michael J. Madigan ("the Madigan Defendants").

**ANSWER:** Defendants admits that for limited periods in 2012, Plaintiff was paid by the Democratic Majority for services performed as a political campaign consultant; for limited periods in 2014, Plaintiff was paid by Friends of Michael J. Madigan for services performed as a

---

[1] Defendant Democratic Party of Illinois has filed a Motion to Dismiss contemporaneously with the filing of this pleading. Pursuant to the Court's Standing Order Regarding Mandatory Initial Discovery Pilot Project, parties must file answers even if they have already filed a preliminary motion pursuant to Rule 12(b). (Paragraph 3, at p. 2 of the Standing Order Regarding Mandatory Initial Discovery Pilot Project).

political campaign consultant; and for limited periods in 2016, Plaintiff was paid by the Democratic Majority and the Friends of Michael J. Madigan committees for services performed as a political campaign consultant or paid volunteer. Defendants admit that Michael J. Madigan is the Speaker of the House for the Illinois House of Representatives and that he is the Chairman of the named defendant entities, but Defendants deny the remaining allegations.

2. While working for the Madigan Defendants, Ms. Hampton was subjected to severe and persistent sexual harassment by her supervisor Kevin Quinn.

**ANSWER:** Defendants deny the allegations of Paragraph 2.

3. Ms. Hampton reported to the Madigan Defendants, and to Michael J. Madigan directly, Kevin Quinn's conduct and the sexually hostile work environment she was being and/or had been forced to endure. Ms. Hampton's reports about Kevin Quinn's misconduct were disregarded and ignored.

**ANSWER:** Defendants admit that by undated letter directed to Michael J. Madigan, Ms. Hampton reported that she received "inappropriate text messages on several occasions," as stated in Exhibit D to her Amended Complaint. Exhibit D to Plaintiff's complaint speaks for itself. Defendants admit that in February of 2017, Plaintiff met with Alderman Marty Quinn and reported at that time that Kevin Quinn had sent her text messages with the implication that he had asked her out. Defendants deny the remaining allegations of Paragraph 3.

4. The Madigan Defendants retaliated against Ms. Hampton for asserting her right to be free from unlawful harassment and a sexually hostile work environment by, among other ways, failing to hire her to work as a political consultant for the 2018 campaign cycle.

**ANSWER:** Defendants deny the allegations of Paragraph 4.

5. The Madigan Defendants had no legitimate reason for failing to hire and/or allow Ms. Hampton to work as a political staffer and/or campaign manager and the stated reasons for their employment actions were pretexts to hide unlawful employment actions as alleged below.

**ANSWER:** Defendants deny the allegations of Paragraph 5.

6. Ms. Hampton brings this action to redress the discriminatory and retaliatory acts taken by the Madigan Defendants for opposing and reporting sexual harassment, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

**ANSWER:** Defendants admit that Plaintiff is asserting causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. Defendants deny that any violations of law have occurred and deny any remaining allegations of Paragraph 6.

7. In direct violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*., the Madigan Defendants engaged in the discriminatory and retaliatory acts described in the charges of discrimination attached hereto. The Madigan Defendants' discriminatory and retaliatory conduct, as aforesaid, was done with malice and/or with reckless indifference to Ms. Hampton's rights.

**ANSWER:** Defendants deny the allegations of Paragraph 7.

8. As a result of the Madigan Defendants' discriminatory and retaliatory conduct, Ms. Hampton has suffered injury to her career as well as other injuries for which she is entitled to actual, compensatory and punitive damages, as well as equitable relief pursuant to the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

**ANSWER:** Defendants deny that any discriminatory or retaliatory conduct occurred and, therefore, deny the allegations of Paragraph 8.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Count I pursuant to, among others, 28 U.S.C. §§ 1331 and 1343.

**ANSWER:** Admitted.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Ms. Hampton's claims arise out of incidents that occurred within the Northern District of Illinois.

**ANSWER:** Admitted.

11. Ms. Hampton brings her claims subsequent to the timely filing of charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") in which the Madigan Defendants were named as respondents, true and correct copies of which are attached hereto as Exhibits 1 & 2 and incorporated herein by reference.

**ANSWER:** Defendants admit that Plaintiff filed charges of retaliation against each Defendant, named as Respondents, on or around February 16, 2018 and March 14, 2018 and that true and correct copies of those charges are attached as Exhibits 1 & 2 to the Amended Complaint. Defendants admit that Plaintiff's limited retaliation claim premised on allegations of

301704943v1 1007667

a failure to hire in or around November of 2017 fall within the 300 day limitations period. However, Defendants deny that allegations or claims raised in those charges occurring prior to November of 2017 are timely, as they fall outside the 300 day limitations period.

12. Ms. Hampton files suit pursuant to Right to Sue Letters issued by the EEOC and within the statutory time requirements, true and correct copies which are attached hereto as Exhibit 3 and incorporated herein by reference.

**ANSWER:** Admitted.

### PARTIES

13. Plaintiff Alaina Hampton ("Ms. Hampton") resides in Illinois.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13.

14. Defendant Democratic Party of Illinois ("DPI") is a political party committee with the purpose of electing Democratic candidates to public and political offices in the State of Illinois. Illinois House Speaker Michael J. Madigan ("Speaker Madigan"), is, and at all relevant times was, the Chairman of DPI.

**ANSWER:** Admitted.

15. Defendant Friends of Michael J. Madigan ("Friends of Madigan") is a candidate committee with the purpose of electing Speaker Madigan. Speaker Madigan, is, and at all relevant times was, the Chairman of Friends of Madigan.

**ANSWER:** Admitted.

16. Defendant Democratic Majority is a political party committee with the purpose of electing candidates to the Illinois House. Speaker Madigan is, and at all relevant times was, the Chairman of the Democratic Majority.

**ANSWER:** Admitted.

17. Defendant 13th Ward Democratic Organization ("13th Ward Organization") is a political party committee with the purpose of supporting the political goals of members of the 13th Ward. Speaker Madigan is, and at all relevant times was, the Chairman of the 13th Ward Organization. Marty Quinn ("Alderman Quinn") is, and at all relevant times was, the Alderman for the City of Chicago's 13th Ward. Alderman Quinn and Speaker Madigan share office space for their respective ward and district offices (hereafter, "13th Ward Office").

**ANSWER:** Admitted.

18. As Chairman of the Madigan Defendants, Speaker Madigan controls the accounts of each campaign fundraising entity and is able to transfer money from one account to another to support democratic campaigns and candidates. Funds from the Madigan Defendants' accounts are used, at various times, to pay the salaries of their political campaign staffers. Based on information and belief, as Chairman of the Madigan Defendants, Speaker Madigan also controls their employment decisions, including whether they employ and/or provide funds to any specific campaign to employ any individual as a paid staffer for any specific political campaign.

**ANSWER:** Defendants admit that Speaker Madigan is the Chairman of the named Defendant political committees and that, as Chairman, Speaker Madigan ultimately has authority over the accounts or funds of the organizations, and staffing decisions. However, Defendants deny that Speaker Madigan transfers funds from any account to another or makes specific staffing decisions. Defendants admit that funds from the respective accounts of the Friends of Michael J. Madigan, Democratic Majority or the Democratic Party of Illinois may be used at various times to pay various expenses, including the salaries of employees as may be applicable or compensation to political campaign consultants. Defendant denies all remaining allegations.

## FACTS

19. In or around August, 2012, after graduation from college with a degree in political science, Ms. Hampton began working for the Madigan Defendants.

**ANSWER:** Defendants admit that in or around August of 2012, Plaintiff was a political campaign consultant for which she received compensation from the Democratic Majority organization. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning Plaintiff's college education or degree. Defendants deny any remaining allegations in Paragraph 19.

20. From approximately August, 2012, through approximately March, 2016, Ms. Hampton worked on, managed and ran several successful and notable campaigns for the Madigan Defendants, including, among others, Illinois State Representative Sue Scherer, Illinois State Representative Kathleen Willis, Alderman Deb Mell, and Illinois State Representative Juliana Stratton. Ms. Hampton also worked on Speaker Madigan's legislative staff. Throughout this time, Ms. Hampton's supervisor was Alderman Quinn.

5

**ANSWER:** Defendants admit that from August through November 2012 Plaintiff was a political campaign consultant for which she received compensation from the Democratic Majority for services provided to the campaigns of Sue Scherer and Kathleen Willis. Defendants admit that from February to March 2014 Plaintiff was a political campaign consultant for which she received compensation from Friends of Michael J. Madigan for services provided to the campaign of Sam Rosenberg. Defendants admit Plaintiff was employed by the State of Illinois as a staffer for State Representative Silvana Tabares between 2012 - 2013. Defendants deny the remaining allegations of Paragraph 20.

21. After successfully running Juliana Stratton's 5th District campaign, Alderman Quinn and Speaker Madigan informed Ms. Hampton that they wanted her to become a more permanent member of the Democratic Organization and therefore arranged for Ms. Hampton to work at Chicago Heights Economic Development Corporation. As part of the arrangement, Ms. Hampton was expected to also work for the Madigan Defendants, which she did, from approximately July, 2016, through April, 2017.

**ANSWER:** Defendants admit that Plaintiff was employed by the Friends of Juliana Stratton campaign organization and that Juliana Stratton was the successful candidate for the 5th District State Representative race. Defendants admit that Alderman Quinn subsequently recommended Plaintiff for consideration for employment with the Chicago Heights Economic Development Organization, as well as spoke to Plaintiff about becoming a volunteer for the 13th Ward Democratic Organization. Defendants deny the remaining allegations of Paragraph 21.

22. From approximately July, 2016, through December, 2016, Ms. Hampton was assigned to work on three separate democratic campaigns. Ms. Hampton received a salary for her work on the campaigns from Defendant Friends of Madigan and Defendant Democratic Majority. *See* Exhibit 1, attachment Exhibit B & Exhibit 2, attachment Exhibit B, which are attached hereto and incorporated herein by reference.

**ANSWER:** Defendants admit that from approximately September, 2016 to November, 2016, Plaintiff was a political campaign consultant and was compensated by the Democratic Majority for services provided to the campaigns of Kate Cloonen, Deb Conroy, and Merry

Marwig. Defendants also admit that Plaintiff received an additional payment from Friends of Michael J. Madigan for her volunteer services. Defendants deny the remaining allegations of Paragraph 22.

23. Ms. Hampton's direct supervisor was Kevin Quinn. Kevin Quinn, at all relevant times, was employed by the Madigan Defendants as a state government and political staffer and received a salary from Friends of Madigan. Kevin Quinn is widely known as a high-ranking political operative for the Madigan Defendants and Speaker Madigan. Kevin Quinn is Alderman Quinn's brother and, at all relevant times, worked out of Alderman Quinn's and Speaker Madigan's 13th Ward Office.

**ANSWER:** Defendants admit that Kevin Quinn is Alderman Marty Quinn's brother, that he was compensated by the Friends of Michael J. Madigan organization at various times relevant to the allegations for services rendered as a consultant and that he worked at various times from 6500 S. Pulaski. Defendants deny the remaining allegations of Paragraph 23.

24. Alderman Quinn, also served as Ms. Hampton's supervisor. During the relevant time period, Alderman Quinn also received a salary from Defendant Friends of Madigan.

**ANSWER:** Defendants deny the allegations of Paragraph 24.

25. On a daily basis, Kevin Quinn was responsible for directing Ms. Hampton to any one of the three campaigns to which Ms. Hampton was assigned. Kevin Quinn is 15 years older than Ms. Hampton and married with children.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation concerning the relative ages of Plaintiff and Kevin Quinn. Defendants admit that in 2016 and 2017, Kevin Quinn was married and has children. Defendants deny the remaining allegations of Paragraph 25.

26. Beginning in or around August, 2016, Kevin Quinn began to subject Ms. Hampton to severe and pervasive sexual harassment by pursuing Ms. Hampton to have a romantic and sexual relationship with him.

**ANSWER:** Defendants admit that Plaintiff has attached portions of text message communications between herself and Kevin Quinn as Exhibit C to her Amended Complaint, some of which indicate a date of August 29 [2016]. The remaining allegations of Paragraph 26

7

call for an improper legal conclusion as to whether these communications rise to the level of actionable sexual harassment as recognized under Title VII of the Civil Rights Act of 1964 for which no answer is required. To the extent an answer is required, Defendants deny the allegations of Paragraph 26.

27. Kevin Quinn's sexual harassment continued through approximately February, 2017.

**ANSWER:** Defendants deny the allegations of Paragraph 27.

28. Specifically, during this five-month period, Kevin Quinn called Ms. Hampton repeatedly, late at night, and sent her dozens of text messages asking her out, telling her she was "smoking hot" and urging her to go out with him. *See* Exhibit 1, attachment Exhibit C & Exhibit 2, attachment C, which are attached hereto and incorporated herein by reference.

**ANSWER:** Defendants admit that Plaintiff has attached portions of text message communications between herself and Kevin Quinn as Exhibit C to her Amended Complaint, some of which indicate dates of "August 29 [2016]" and "January 17." Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning the time or number of phone calls or text messages not otherwise included in Exhibit C to Plaintiff's Amended Complaint. The content of those communications identified in Exhibit C speaks for itself with respect to requests or statements made by Kevin Quinn or responses made by Plaintiff. Defendants deny any remaining allegations contained in Paragraph 28.

29. Kevin Quinn's unwelcomed and sexually harassing text messages continued on a regular basis despite the fact that Ms. Hampton repeatedly told Kevin Quinn that she wanted to keep their relationship strictly professional and that she did not want to be involved with him in a romantic or sexual relationship. *Id.*

**ANSWER:** Defendants admit that Plaintiff has attached portions of text message communications between herself and Kevin Quinn as Exhibit C to her Amended Complaint. The content of those communications identified in Exhibit C speaks for itself with respect to requests made by Kevin Quinn or responses made by Plaintiff. Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegation concerning whether conduct was unwelcome beyond Plaintiff's communications attached in Exhibit C to the Amended Complaint. The remaining allegations of Paragraph 29 call for an improper legal conclusion as to whether these communications rise to the level of actionable sexual harassment as recognized under Title VII of the Civil Rights Act of 1964 for which no answer is required. To the extent an answer is required, Defendants deny the remaining allegations of Paragraph 29.

30. Notwithstanding Ms. Hampton's repeated statements that she wished to maintain a professional relationship, Kevin Quinn refused to take "no" for an answer.

**ANSWER:** Defendants admit that Plaintiff has attached portions of text message communications between herself and Kevin Quinn as Exhibit C to her Amended Complaint. The content of those communications identified in Exhibit C speaks for itself with respect to requests made by Kevin Quinn or responses made by Plaintiff. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

31. Kevin Quinn's sexually harassing conduct was objectively and subjectively severe and pervasive so as to unreasonably interfere with Ms. Hampton's health, and work performance so as to create an intimidating, hostile and offensive working environment.

**ANSWER:** The allegations of Paragraph 31 call for an improper legal conclusion as to whether these communications rise to the level of actionable sexual harassment as recognized under Title VII of the Civil Rights Act of 1964 for which no answer is required. To the extent an answer is required, Defendants deny the allegations of Paragraph 31.

32. In approximately mid-February, 2017, Ms. Hampton reported Kevin Quinn's sexual advances and harassment to her and Kevin Quinn's supervisor, Alderman Quinn.

**ANSWER:** Defendants admit that in February of 2017, Plaintiff met with Alderman Marty Quinn and reported at that time that Kevin Quinn had sent her text messages asking her out. Defendants deny the remaining allegations of Paragraph 32.

301704943v1 1007667

33. During her meeting with Alderman Quinn, Ms. Hampton reported Kevin Quinn's sexually harassing conduct and personally read to Alderman Quinn examples of the harassing text messages that Kevin Quinn had sent her throughout the prior five-month period.

**ANSWER:** Defendants admit that in early 2017, Plaintiff met with Alderman Marty Quinn and reported at that time that Kevin Quinn had sent her text messages with the implication that he had asked her out. Defendants deny the remaining allegations of Paragraph 33.

34. Alderman Quinn, however, failed to take corrective or remedial action.

**ANSWER:** Defendants deny the allegations of Paragraph 34.

35. Instead, Alderman Quinn informed Ms. Hampton that she could "block" Kevin Quinn's phone number on her phone and that Ms. Hampton would no longer be required to report to Kevin Quinn directly. Despite this alleged assurance, Alderman Quinn stated that he wanted Ms. Hampton's next assignment for the Madigan Defendants to be working as a precinct officer. However, if Ms. Hampton worked as a precinct officer, she would again be forced to work with Kevin Quinn, the very supervisor who was sexually harassing her.

**ANSWER:** Defendants deny the allegations of Paragraph 35.

36. In or around April, 2017, Ms. Hampton was constructively discharged and forced to stop working for the Madigan Defendants because she could no longer suffer the crippling fear and anxiety she experienced having to work with Kevin Quinn.

**ANSWER:** Defendants deny the allegations of Paragraph 36.

37. In November, 2017, Ms. Hampton reported the sexual harassment directly to Speaker Madigan.

**ANSWER:** Defendants admit that Plaintiff sent the undated letter to Michael J. Madigan attached as Exhibit D to Plaintiff's Amended Complaint, in which Ms. Hampton reported that she received "inappropriate text messages on several occasions," as stated in Exhibit D to Plaintiff's Amended Complaint. Exhibit D to Plaintiff's complaint speaks for itself. The remaining allegations of Paragraph 37 call for an improper legal conclusion as to whether the communications rise to the level of actionable sexual harassment as recognized under Title VII of the Civil Rights Act of 1964 for which no answer is required. To the extent an answer is required, Defendants deny the allegations of Paragraph 37.

38. Specifically, on or about November 1, 2017, Ms. Hampton wrote a letter to Speaker Madigan to explain the circumstances surrounding her departure as she did not believe, based on her conversation with Speaker Madigan on or about April 17, 2017, at a political fundraiser that Ms. Hampton hosted for Juliana Stratton, that Alderman Quinn had informed Speaker Madigan of what had transpired. Ms. Hampton contacted Speaker Madigan with the expectation that, once informed of the true circumstances of why she stopped working for the Madigan Defendants, Speaker Madigan would allow her to return to work for the upcoming campaigns in her former role.

**ANSWER:** Defendants admit that Plaintiff sent the undated letter attached as Exhibit D to Plaintiff's Amended Complaint, the content of which speaks for itself. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 38.

39. Speaker Madigan did not respond to Ms. Hampton's letter or take any corrective or remedial action against Kevin Quinn.

**ANSWER:** Defendants admit that Speaker Madigan did not personally respond to Plaintiff undated letter attached as Exhibit D to Plaintiff's Amended Complaint. Defendants deny the remaining allegations of Paragraph 39.

40. Instead, on or about November 13, 2017, Heather Wier Vaught ("Ms. Vaught"), a private attorney who serves part time as special counsel to Speaker Madigan and the Madigan Defendants, called Ms. Hampton and scheduled a meeting with her for November 15, 2017 at a coffee shop. *See* Exhibit 1, attachment Exhibit E & Exhibit 2, attachment E, which are attached hereto and incorporated herein by reference.

**ANSWER:** Defendants admit that Heather Wier Vaught is an attorney and that she provides legal services to Speaker Madigan and the Defendants. Defendants admit that in November of 2017 Wier Vaught was an attorney for Friends of Michael J. Madigan, and that Ms. Vaught contacted Plaintiff in response to Plaintiff's undated letter attached as Exhibit D to Plaintiff's Amended Complaint. Defendants admit Ms. Vaught and the Plaintiff scheduled a meeting on November 15, 2017 which took place at Au Bon Pain in Chicago.

41. During the November 15, 2017 meeting, which lasted no more than one hour, Ms. Vaught minimized Kevin Quinn's sexual harassment, told Ms. Hampton that she was not sexually harassed or subjected to a sexually hostile work environment because she was not an

11

"employee", and flippantly accused Ms. Hampton of wanting to get a "front page newspaper story" and money.

**ANSWER:** Defendants deny the allegations of Paragraph 41.

42. During the meeting, Ms. Hampton provided Ms. Vaught with hard copies of all the sexually harassing text messages she received from Kevin Quinn and asked Ms. Vaught to share them with Speaker Madigan. Ms. Hampton also asked about being hired by the Madigan Defendants to work on upcoming campaigns in her former role. Ms. Vaught promised to follow up with Ms. Hampton, but never did.

**ANSWER:** Defendants admit that Plaintiff provided a hard copy of text messages between Plaintiff and Kevin Quinn during the meeting on November 15, 2017, but Defendants lack sufficient knowledge to determine whether the Plaintiff provided all of the text messages. Defendant admits that Plaintiff asked Ms. Vaught to share the text messages with Speaker Madigan. Defendants deny the remaining allegations of Paragraph 42.

43. On or about December 12, 2017, Ms. Hampton sent Ms. Vaught a text message asking Ms. Vaught if she thought it was okay if she contacted Alderman Quinn directly to discuss assisting him and the Madigan Defendants on the 5th District race, as she had previously successfully managed Juliana Stratton's campaign in that District. *See* Exhibit 1, attachment Exhibit E & Exhibit 2, attachment E, which are attached hereto and incorporated herein by reference.

**ANSWER:** Defendants admit that Plaintiff sent a text message to Ms. Vaught on December 12, 2017, the content of which was "Hi there- since Ken Dunkin filed to run for Juliana's seat, I would like to email Marty to offer to help if he wants it. Do you think that would be ok?" This text message is attached as Exhibit E to Plaintiff's Amended Complaint. Defendants deny the remaining allegations of Paragraph 43.

44. In response, Ms. Vaught told Ms. Hampton she would call her the next day to discuss it, however, she never did. *Id.*

**ANSWER:** Admitted.

45. On or about January 15, 2018, Ms. Hampton again reached out to Ms. Vaught via text message. *Id.* Ms. Vaught responded that she would contact Ms. Hampton later that day but never did. *Id.*

12

**ANSWER:** Defendants admit that Plaintiff sent s text message to Ms. Vaught on January 15, 2018, the content of which was "Can we touch base?" and Ms. Vaught responded, "Yes, so sorry we didn't. I'm in a mtg downtown today – can we talk around 1:30-2?" These text messages are attached as Exhibit E. Defendants deny the remaining allegations of Paragraph 45

46. On or about January 15, 2018, Ms. Hampton contacted Alderman Quinn directly regarding opportunities to work for the Madigan Defendants on upcoming campaigns as she had so successfully done in the past. Alderman Quinn did not respond.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence. Defendants admit that Alderman Quinn did not speak with Plaintiff in January of 2018.

47. Instead, immediately after she contacted Alderman Quinn, Ms. Hampton learned that she would not be hired by the Madigan Defendants and the reason she would not be hired was because the Madigan Defendants were not involved in the 5th District race.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

48. Ms. Hampton subsequently learned that the reason provided by the Madigan Defendants for not hiring her was untrue. In fact, Ms. Hampton learned that the Madigan Defendants selected another individual to work on the 5th District campaign-the same campaign she had sought to work on, on the Madigan Defendants' behalf.

**ANSWER:** Defendants admit that an individual was hired as a campaign manager for the 5th District campaign and denies all remaining allegations of Paragraph 48.

49. Between February, 2017, and February, 2018, despite Ms. Hampton's reports to Speaker Madigan, the Madigan Defendants, and Alderman Quinn, Kevin Quinn continued to work in a supervisory capacity for the Madigan Defendants.

**ANSWER:** Defendants deny the allegations of Paragraph 49.

50. At no time between November, 2017, when Ms. Vaught first contacted Plaintiff on behalf of the Madigan Defendants, and February, 2018, when the Madigan Defendants terminated Kevin Quinn, did Ms. Vaught or the Madigan Defendants inform Ms. Hampton that they were conducting an investigation into her allegations of sexual harassment against Kevin Quinn.

13

**ANSWER:** Defendants deny the allegations of Paragraph 50.

51. Upon information and belief, the Madigan Defendants have ignored and/or disregarded other reports of sexual harassment of female employees and volunteers working for the Madigan Defendants.

**ANSWER:** Defendants deny the allegations of Paragraph 51.

52. On or about February 11, 2018, Ms. Hampton was interviewed by the Chicago Tribune about the sexual harassment and hostile work environment she experienced working for the Madigan Defendants.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether Plaintiff was interviewed by the Chicago Tribune on a certain date about certain topics. The remaining allegations call for a legal conclusion concerning whether conduct rose to the level of actionable sexual harassment or hostile work environment as recognized under Title VII of the Civil Rights Act of 1964 for which no answer is required. To the extent an answer is required, Defendants deny the allegations.

53. The next day, the Madigan Defendants announced publicly that they had terminated Kevin Quinn.

**ANSWER:** Defendants admit that on or about February 12, 2018, Speaker Madigan announced that Kevin Quinn was terminated. Defendants deny any remaining allegations inconsistent with this response.

**COUNT I- VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e *et seq*.**

*(Retaliation)*

54. Ms. Hampton repeats, realleges and incorporates by reference paragraphs 1- 53 as if fully stated herein.

**ANSWER:** Defendants repeat and incorporate their responses to paragraphs 1-53 as if fully stated herein.

55. Ms. Hampton at all times pertinent hereto was a person protected by the provisions of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

14

**ANSWER:** Defendants deny the allegations of Paragraph 55.

56. The Madigan Defendants at all times relevant hereto, were employers as defined by 42 U.S.C. § 2000e(b).

**ANSWER:** Defendants deny the allegations of Paragraph 56.

57. During the course of her employment, Ms. Hampton was subjected to severe and pervasive sexual harassment at the hands of her supervisor Kevin Quinn.

**ANSWER:** Defendants deny the allegations of Paragraph 57.

58. Kevin Quinn's sexual harassment was objectively and subjectively severe and pervasive so as to unreasonably create a hostile and intimidating work environment that interfered with Ms. Hampton's ability to do her job.

**ANSWER:** Defendants deny the allegations of Paragraph 58.

59. Ms. Hampton engaged in protected activity by reporting and opposing Kevin Quinn's sexual harassment to her supervisor Alderman Quinn, Speaker Madigan and the Madigan Defendants.

**ANSWER:** Defendants deny the allegations of Paragraph 59.

60. Ms. Hampton engaged in protected activity by filing charges of discrimination against the Madigan Defendants.

**ANSWER:** Defendants deny the allegations of Paragraph 60.

61. Ms. Hampton was subjected to a materially adverse employment action when the Madigan Defendants failed to hire her to work during the 2018 campaign cycle.

**ANSWER:** Defendants deny the allegations of Paragraph 61.

62. In direct violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2200e *et seq*., the Madigan Defendants retaliated against Ms. Hampton for reporting and opposing sexual harassment by, among other ways, failing to hire her and/or allow her to continue working for them in her former role for which she was qualified.

**ANSWER:** Defendants deny the allegations of Paragraph 62.

63. The Madigan Defendants' discriminatory and retaliatory conduct, as alleged herein, was done with malice and/or with reckless indifference to Ms. Hampton's rights.

**ANSWER:** Defendants deny the allegations of Paragraph 63.

64. As a result of the Madigan Defendants' discriminatory and retaliatory conduct, Ms. Hampton has suffered injury to her career and her reputation, as well as other injuries for

which she is entitled to actual, compensatory and punitive damages, as well as equitable relief, pursuant to the Civil Rights Act of 1964, 42 U.S.C. §§ 2200e *et seq*.

**ANSWER:** Defendants deny the allegations of Paragraph 64.

## AFFIRMATIVE DEFENSES

1. To the extent Plaintiff's claim for liability is based on events occurring outside the applicable 300 day limitations period, such claims are untimely and barred by the statute of limitations.

2. To the extent Plaintiff's claims rely on matters not asserted within her charge, such claims are barred for failing to exhaust her administrative remedies.

WHEREFORE, Friends of Michael J. Madigan, Democratic Majority and 13th Ward Democratic Organization, deny that Plaintiff, Alaina Hampton, is entitled to a judgment against these Defendants in any amount whatsoever.

Respectfully submitted,

/s/ Aimee E. Delaney
Aimee E. Delaney
One of the Attorneys for Defendants

Aimee E. Delaney
James M. Lydon
Leigh C. Bonsall
Sunghee Sohn
Hinshaw & Culbertson LLP
222 North LaSalle Street
Suite 300
Chicago, IL 60601-1081
Telephone: 312-704-3000
Facsimile: 312-704-3001
adelaney@hinshawlaw.com
jlydon@hinshawlaw.com
lbonsall@hinshawlaw.com
ssohn@hinshawlaw.com

301704943v1 1007667

## **CERTIFICATE OF SERVICE**

I, the undersigned attorney, certify that I filed the above document on June 5, 2018 through the Court's ECM/CF system, which will cause electronic notification of this filing to be sent to all counsel of record.

/*s/ Leigh C. Bonsall*
Leigh C. Bonsall

301704943v1 1007667