# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALAINA HAMPTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 18 C 2069 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| DEMOCRATIC PARTY OF ILLINOIS, | ) |
| FRIENDS OF MICHAEL J. MADIGAN, | ) |
| DEMOCRATIC MAJORITY, and | ) |
| 13TH WARD DEMOCRATIC | ) |
| ORGANIZATION, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Alaina Hampton worked for several years in various roles for organizations engaging in political activity in support of Democratic Candidates and the Democratic Party of Illinois. While serving in these roles, Hampton alleges she experienced persistent, severe sexual harassment from Kevin Quinn, who was her direct supervisor. Hampton now brings this single count lawsuit alleging that Defendants the Democratic Party of Illinois ("DPI"), Friends of Michael J. Madigan, Democratic Majority, and 13th Ward Democratic Organization retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Defendant DPI now moves to dismiss [25] the First Amended Complaint ("FAC") arguing that it was never Hampton's employer for purposes of Title VII liability. Because Hampton has adequately alleged that DPI, through its Chairman, exercised substantial control over her employment, the Court denies DPI's motion to dismiss Hampton's Title VII claim.

# BACKGROUND[1]

Hampton worked for various political campaigns between 2012 and 2016 in a variety of roles. Consistent success and positive feedback for her performance was the theme during her tenure as a campaign worker. Her supervisor during this time was City of Chicago Alderman Marty Quinn ("Alderman Quinn").

After Hampton worked on Juliana Stratton's successful campaign for the Illinois House of Representatives 5th District in the Spring of 2016, Alderman Quinn and Michael Madigan, the Speaker of the Illinois House of Representatives, arranged for Hampton to work at the Chicago Heights Economic Development Corporation. Madigan was, at all relevant times, the Chairman of all Defendants. As part of this arrangement, Hampton had an obligation to work for the Defendants, assisting with various Democratic political campaigns.

Between July 2016 and April 2017, Hampton worked for three separate campaigns. She received compensation for this work from Friends of Michael J. Madigan and Democratic Majority. While working for these campaigns, Hampton's direct supervisor was Kevin Quinn ("Quinn"), Alderman Quinn's brother. Defendants employed Quinn during at this time and Quinn received his salary from Friends of Michael J. Madigan. Quinn directed Hampton's work on a daily basis. Alderman Quinn also served as Hampton's supervisor during this period. He, too, received a salary from Friends of Michael J. Madigan for this work.

In August 2016, shortly after Hampton began working under Quinn, Quinn began pursuing a romantic relationship with Hampton. Over the following five-month period, Quinn called Hampton and sent her text messages on numerous occasions asking her out and commenting on her appearance. In one text message sent in September 2016, he told her she

---

[1] The facts in the background section are taken from the FAC and are presumed true for the purpose of resolving DPI's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

was "smoking hot" in refence to a picture on Facebook of her in a bathing suit. Doc. 9-1 at 26. Over the ensuing months, Quinn continued to pursue dates with Hampton despite her repeatedly informing him that she wanted to keep their relationship strictly professional.

In February 2017, Hampton reported Quinn's behavior to Alderman Quinn. She read examples of the text messages she had received from Quinn to Alderman Quinn. Alderman Quinn told Hampton that she should block Quinn's phone number and that she would no longer report to Quinn. However, Alderman Quinn next assigned Hampton to work as a precinct officer, which required reporting directly to Quinn. In April 2017, Hampton quit working for Defendants because she could no longer tolerate working with Quinn.

Hampton sent a letter to Madigan on November 1, 2017, notifying him of her experience working under Quinn. Madigan did not respond to her letter. But on November 13, 2017, a lawyer who serves as special counsel to Madigan and the Defendants contacted Hampton. Hampton met with the lawyer on November 15, 2017, at a coffee shop. During the meeting, Hampton asked about getting a position with the Defendants in the upcoming election cycle. The lawyer told Hampton she would follow up with her about it, but never did.

Hampton contacted the lawyer again in December to ask if Hampton could directly contact Alderman Quinn to discuss working on the next 5th District campaign. The lawyer never returned her message regarding this request. Hampton again reached out in January and the lawyer again told her she would follow up later, but never did. Finally, in January, Hampton contacted Alderman Quinn directly regarding opportunities to work for the Defendants, but he did not respond. Hampton subsequently learned that Defendants would not hire her because Defendants were not involved in the 5th District race, which was untrue.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937.

**ANALYSIS**

DPI moves to dismiss Hampton's retaliation claim, arguing that she has not pleaded an employment relationship between herself and DPI. To assert a retaliation claim under Title VII, a plaintiff must allege the existence of an employment relationship. *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991). Hampton argues that her allegations are sufficient to support a claim that she had an employment relationship with DPI under either a "joint employer" theory or a "de facto or indirect employer" theory.

A plaintiff may pursue a Title VII claim under the theory that an entity was one of her joint employers, *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 895–96 (7th Cir. 2015), or under a de facto or indirect employer theory, *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 702 (7th Cir. 2015). But the touchstone of both tests is control. *Compare Whitaker v.*

*Milwaukee County, Wis.*, 772 F.3d 802, 810 (7th Cir. 2014), *with Love*, 779 F.3d at 702. Thus, to determine if an entity constitutes an employer, the Seventh Circuit looks to "whether the putative employer exercised sufficient control, and whether the 'economic realities' are such that the putative employer can be held liable under Title VII." *Love*, 779 F.3d at 702. In this control analysis, 'the key powers are, naturally, those of hiring and firing." *Id.* at 703 (quoting *E.E.O.C. v. State of Ill.*, 69 F.3d 167, 171 (7th Cir. 1995)). But courts typically will not resolve the question of whether an employment relationship exists at the pleading stage because it requires a fact intensive inquiry. *See Penteris v. Citgo Petroleum Corp.*, 104 F. Supp. 3d 894, 900 (N.D. Ill. 2015).

Hampton's allegations that DPI exercised sufficient control to be liable under Title VII are summarized as follows. DPI, along with the other Defendants, share a Chairman: Madigan. All Defendants share a common purpose: electing Democratic candidates in Illinois. As the Chairman of all four Defendants, Madigan controls their bank accounts, has the ability to transfer money between the accounts, and controls the employment decisions for each Defendant. Madigan took an active role in assigning Hampton to various positions working for the Defendants and he made these decisions in his capacity as Chairman of DPI. This last point is not contained in the FAC itself; however, it is consistent with the allegations of the FAC and is a factual elaboration on her alleged interactions with the Defendants and Madigan. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (a party may "elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings").

This is not like the two cases DPI has cited in support of its contention that dismissal at this stage is appropriate. In *Shah v. Littelfuse Inc.*, the court rejected plaintiff's joint employer theory arguments because he did not allege any facts that "[defendant] controlled [plaintiff's]

5

work conditions, assignments, evaluations, or performance." No. 12 CV 6845, 2013 WL 1828926, at *3 (N.D. Ill. Apr. 29, 2013). Whereas here, Hampton alleges that Madigan, in his capacity as Chairman of DPI, made decisions about where Hampton worked and had the ultimate authority over her employment, which is "key" to the control analysis. *Love*, 779 F.3d at 703. And in *Garzon v. Arrowmark Colorado Holdings, LLC*, the court dismissed the plaintiff's claim against one employer where the plaintiff's joint employer theory was not supported by allegations that the putative employer exerted control over her employment; she only alleged that it exerted day-to-day control over the operations of her actual employer. No. 16 C 11525, 2017 WL 6988659, at *3 (N.D. Ill. Dec. 20, 2017). The court held that this allegation was irrelevant to the control analysis for Title VII liability because it said nothing about the control the defendant exerted over the plaintiff herself. *Id.* Here, on the other hand, Hampton alleges that the Chairman of DPI directly asserted control over her employment, determining where she worked and whether she was employed by Defendants at all.

At this early stage, Hampton has done enough to put DPI on notice of the basis for her claim and plausibly alleged that DPI exerted control over her employment with Defendants to establish an employment relationship. Thus, the Court denies DPI's motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court denies DPI's motion to dismiss [25].

Dated: October 30, 2018

_____
SARA L. ELLIS
United States District Judge