```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION

ALAINA HAMPTON,                    )   No. 18 C 2069
                                   )
           Plaintiff,              )
                                   )
       vs.                         )   Chicago, Illinois
                                   )
DEMOCRATIC PARTY OF ILLINOIS,      )
FRIENDS OF MICHAEL J. MADIGAN,     )
DEMOCRATIC MAJORITY, and 13th WARD )
DEMOCRATIC ORGANIZATION,           )
                                   )   May 30, 2019
           Defendants.             )   1:45 p.m.

              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HON. SARA L. ELLIS

APPEARANCES:

For the Plaintiff:    MR. SHELLY B. KULWIN
                      MS. RACHEL A. KATZ
                      Kulwin, Masciopinto & Kulwin, LLP,
                      161 North Clark Street, Suite 2500,
                      Chicago, Illinois  60601

For the Defendants:   MS. LEIGH C. BONSALL
                      Hinshaw & Culbertson LLP,
                      151 North Franklin Street, Suite 2500,
                      Chicago, Illinois  60606

For Subpoena
Respondents:          MR. JOSIAH A. GROFF
                      Dowd, Bloch, Bennett, Cervone,
                      Auerbach & Yokich,
                      8 South Michigan Avenue, 19th Floor,
                      Chicago, Illinois  60603



                    PATRICK J. MULLEN
                   Official Court Reporter
                 United States District Court
            219 South Dearborn Street, Room 1412
                   Chicago, Illinois  60604
                       (312) 435-5565
```

1    THE CLERK: 2018 C 2069, Hampton versus Democratic
2 Party of Illinois.
3    MR. KULWIN: Good morning, Your Honor. Shelly Kulwin
4 and Rachel Katz for the plaintiff.
5    MS. BONSALL: Good afternoon, Your Honor. Leigh
6 Bonsall for defendants.
7    MR. GROFF: Good morning -- or afternoon, Your Honor.
8 Josiah Groff here for the subpoena respondents.
9    THE COURT: All right. Good afternoon.
10    All right. So what's the issue with responding to the
11 subpoenas?
12    MR. GROFF: Well, there's three parts, Judge. The
13 first part is -- and I think they admit this -- these subpoenas
14 are seeking information about an allegation that's just not in
15 their complaint.
16    MR. KULWIN: I'm sorry. I didn't hear that. I
17 apologize. I couldn't hear you.
18    MS. KATZ: It's not in the complaint.
19    MR. KULWIN: Okay. I apologize.
20    MR. GROFF: So they say -- and you can see this on
21 page 4 of their motion -- that plaintiff alleges she was
22 harassed by defendants on the job and that the defendants
23 didn't rehire her or hire her. So well enough, that's her
24 allegations. What she's coming after my clients for is the
25 theory that the defendant somehow came to my clients and

1 interfered with her getting another job.
2 THE COURT: So her claim is retaliation. That's her
3 claim.
4 MR. GROFF: Her claim is retaliation by the defendants
5 by not rehiring her for a job with them.
6 THE COURT: So, counsel, her claim is retaliation, and
7 what she is saying is that defendants have retaliated against
8 her and have done that in a variety of ways. Some include not
9 rehiring her. Others include going to different individuals or
10 entities and saying that they should not hire her based on what
11 happened when she was working for Speaker Madigan. So as a
12 subpoena recipient, it's not necessarily your place to say:
13 What you've subpoenaed doesn't relate to the claims in your
14 complaint.
15 You can say: What you've subpoenaed is privileged,
16 and here's a privilege log.
17 What you've subpoenaed is overly burdensome, and
18 there's no way that we can comply. Here's a compromise.
19 But you really can't, unless you're a party which
20 you're not, you can't really say: These don't relate to the
21 claims in your complaint.
22 All right. So what else have you got?
23 MR. GROFF: Sure. Well, I understand your view of the
24 law on that. There are two other concerns that my clients
25 have. The second concern would be the theory here that

1 plaintiff's counsel has for why plaintiff didn't get the job.
2 I've already responded to that, and I think I've sufficiently
3 responded. I understand plaintiff wants to know why she didn't
4 get the job, and I think she's entitled to that. I agree that
5 she's entitled to that.
6 The reason she didn't get the job is because she
7 applied with Johnae Strong's congressional campaign, and the
8 campaign never happened. So that's the reason she didn't get
9 the job. No one got the job, and I explained that to them from
10 the get-go. I also provided them with the publicly filed
11 quarterly reports from Johnae Strong's campaign which show that
12 she collected some money and then never spent it. She never
13 hired any campaign manager.
14 They haven't disputed that. They haven't said that
15 there was somebody else who got the job. So I guess I'm just
16 not sure why they're continuing to pursue this when I've asked,
17 and this connects to my third concern, Judge. I mean, if this
18 was something that was easy for us to produce and it wasn't of
19 any great significance, we wouldn't be here.
20 But our third concern here is they're seeking to dig
21 into my client's electoral strategies and look into why my
22 client -- ultimately why Johnae Strong didn't run. I asked my
23 client about that, and they're very concerned about having that
24 information or turning that information over to anyone,
25 especially with such an attenuated connection to the case, when

1 it's clear that the reason that plaintiff didn't get the job
2 with Johnae Strong was that there was no campaign.
3 We're concerned about Johnae Strong's privacy. We're
4 concerned about our electoral strategies. I asked them: Will
5 you limit your subpoena to information only about Alaina
6 Hampton and not information about Johnae Strong unrelated to
7 Alaina Hampton?
8 They've declined. They say they're not asking for our
9 electoral strategies, but that's what asking for information
10 about Johnae Strong is going to reveal.
11 THE COURT: All right. I think what Ms. Hampton is
12 looking for is communications about her potential hiring for
13 Ms. Strong's campaign and then why she didn't get the job. Is
14 that right?
15 MS. KATZ: Are you looking at me? I'm sorry.
16 THE COURT: Yes.
17 MS. KATZ: Yes, Your Honor. The issue is this. With
18 elections, CTU was funding and endorsing her, so CTU in
19 connection with Ms. Strong interviewed Ms. Hampton. Yes, we're
20 not looking for anything related to Johnae Strong solely that
21 has nothing to do with the 5th District race and Ms. Hampton.
22 The question of why she didn't ultimately run and withdrew her
23 candidacy, we don't care about that. That's not relevant to
24 our claim.
25 The issue is they met with Ms. Hampton. They were

1  eager and ready to hire her in connection with Ms. Strong's
2  campaign.  Ms. Hampton received information that she's persona
3  non grata with the defendants and that CT was concerned about
4  that and CT goes dark.  At that point, Ms. Strong is still
5  running.  She hasn't withdrawn yet.
6       So what happened in that time period in which they
7  were interested, all of a sudden went dark, and then Ms. Strong
8  didn't end up running, we don't care about why she didn't run,
9  what the electoral strategy was with respect to Ms. Strong.  We
10 just want to know what happened in the interim.
11      THE COURT:  All right.  So in terms of the time
12 period, tell me what that is.
13      MS. KATZ:  We gave a seven-month time period based on
14 records we have of when defendants and people affiliated with
15 defendants started the recruitment process, the time in which
16 Ms. Hampton had these communications with CTU which was in
17 September ultimately until -- I believe it went till March 1st.
18      THE COURT:  Of what year?
19      MS. KATZ:  2018.
20      THE COURT:  2018.
21      MR. KULWIN:  Seven months.
22      MS. KATZ:  Seven months, yes, specifically seven
23 months.
24      THE COURT:  Okay.
25      MR. GROFF:  Judge, in discussions they offered to cut

1  that to four months. Are they now taking that back?
2        MS. KATZ: No, no, no. I stand corrected. It's
3  September 1, 2017, to January 30, 2019. I apologize. That is
4  what we agreed to.
5        THE COURT: All right. So does CTU and Ms. Strong --
6        MS. KATZ: Mind you, Ms. Strong is not a respondent.
7        THE COURT: I'm sorry. Is it Ms. Gates? So it's Emma
8  Tai, the CTU --
9        MR. KULWIN: Mr. Conway.
10       THE COURT: -- and Mr. Conway, right?
11       MR. KULWIN: And Ms. Gates. Yeah, Gates, Tai, and
12 Conway.
13       THE COURT: Okay.
14       MS. KATZ: And we also agreed to limit the subpoena so
15 that it wasn't the CTU, the entity, in terms of communications.
16 So it only involves those three people.
17       THE COURT: Just those three people.
18       MS. KATZ: Yeah.
19       THE COURT: Okay. So do you have communications
20 involving those three individuals around essentially
21 interviewing Ms. Hampton for this position and then deciding
22 not to offer the position to Ms. Hampton between September and
23 January, so September of 2017 and January of 2018?
24       MR. GROFF: My clients showed me emails in which they
25 discussed the terms under which they might hire Ms. Hampton. I

1  mean just compensation and those sorts of things.  All right?
2  I don't know that there are communications, or I don't know
3  whether there are communications about the -- well, let me talk
4  about it another way.  There was no decision not to hire
5  Ms. Hampton.  There was a decision not to have a campaign
6  manager for Johnae Strong's job, which was the only position
7  she applied for.
8          THE COURT:  Okay.
9          MR. GROFF:  Thus I don't think there are emails.  I
10 mean, I will check with them, but I don't think there are
11 emails saying they're not going to hire Alaina Hampton for this
12 job because there was never a job to give her.  My clients have
13 also told me that they don't have communications.  They don't
14 have what originally plaintiff's counsel was seeking, which
15 were communications with the defendant about this.
16         MS. KATZ:  We still are.
17         MR. KULWIN:  We still are.
18         MR. GROFF:  Well, we don't have those.  My clients
19 told me they don't have those.
20         MR. KULWIN:  Which is ironic, Judge.  I don't mean to
21 jump in here, but it is ironic.  Okay?  Mr. Strong from the
22 jump told us they haven't looked for anything.  He has
23 repeatedly told us they haven't looked for anything.  He's
24 asserted attorney-client privilege without ever seeing the
25 documents.  He's argued this electoral strategy without seeing

1 any documents.
2 　　　　　In our Rule 37 conference on April 29th, I
3 specifically asked him:  Can you tell us when, if ever, your
4 clients will search for the documents?
5 　　　　　He said:  No, I can't.
6 　　　　　Can you tell us when, if ever, you'll ask them when,
7 if ever, they can search for the documents?
8 　　　　　He said:  No, I'm busy.  I can't.
9 　　　　　Can you tell us when, if ever, you might be in a
10 position to answer those other questions?
11 　　　　　He told us:  No.
12 　　　　　Now he stands here -- and if I seem a little heated, I
13 am -- now he stands here and once again says:  They refuse to
14 tell us that they weren't interested in documents unrelated to
15 Ms. Hampton.
16 　　　　　If you look at this motion, we didn't tell him once,
17 we didn't tell him twice, we told him four times, four separate
18 times.  When he brings up relevancy, which I think you
19 articulated pretty quickly was a frivolous objection, we
20 explained that to him five times, twice in the same day.
21 　　　　　Every time we met with Mr. Groff via email, the two
22 times we spoke to him on the phone, it was always the same
23 thing.  He started with this.  His first response was:  She
24 never ran.  We never hired anybody.  Therefore, go away.
25 You're displeasing us.

1        That was his first response.  His next response was:
2   It's unduly burdensome, it's attorney-client, it's
3   confidential, and a bunch of other things.
4        He never looked at the documents.
5        Then his next response was:  Why is this relevant?
6        We explained it again.
7        Then the next response was:  Have you asked the
8   defendants for it?
9        Yes, we have.  They don't have any.
10       Well, then why do I have to look?
11       Well, because you may have documents that they can't
12  find, and they won't have documents of you talking amongst
13  yourselves.
14       Then he comes back again:  I don't understand why we
15  have to look for these if the defendants don't have them.
16       It just went on and on and on and on.
17       Then when we told him we're going to file a motion:
18  Oh, don't file a motion.  We'll make progress.
19       Okay.  I'm a naive guy.  Sure, I assume good faith:
20  Let's talk.  Send me an email.
21       What does he do:  Can I have a week?  I'm busy.
22       Sure, he gets the week.  What does he write:  I don't
23  understand why this is relevant.  I don't understand why you
24  can't get this from the defendants.
25       On and on, it's the same thing:  Okay.  We're going

1  nowhere.  We're going to file a motion.
2              Oh, no, don't.  Please don't file a motion.  We're
3  making progress.
4              What progress I don't know because we hadn't made any.
5  We were discussing the same thing over and over and over again,
6  so we say:  Look, we're not getting anywhere.  I'm not wasting
7  any more money on this.  If you want to have a conference, pay
8  me because we're not doing that.
9              Okay.  Fine.  We'll have a conference without paying.
10 Come to the conference.
11             He comes to the conference.  We have a telephone
12 conference and what does he say:  Why is this relevant?  Why
13 don't you get it from the defendant?
14             THE COURT:  Okay.  I get it, Mr. Kulwin.
15             MR. KULWIN:  Okay.  I'm done with this guy.  This is
16 an example.  Okay?  Sure, we can order him to produce, but this
17 is an example of how you abuse the system and he made it all
18 the way.  Sorry.
19             THE COURT:  Okay.
20             MR. GROFF:  That's a lot to respond to, Judge.
21             THE COURT:  I understand.
22             MR. GROFF:  I've also never been told that I have to
23 pay someone else to have a conference about what they want my
24 clients to produce.  $850 an hour to have a Rule 37.2
25 conference that they're obligated to have?  I mean, I guess

1 it's a good business model, Judge.

2 MR. KULWIN: After we've already had one and after he
3 already --

4 THE COURT: Okay, gentlemen.

5 MR. GROFF: That's not true.

6 THE COURT: Gentlemen, gentlemen, when it comes down
7 to it, I'm really not interested in the back-and-forth. My
8 only job is to make sure that this case moves and that it does
9 so in a way that is fair and follows the law. That's my job.
10 Refereeing disputes between the two of you is not my job. If
11 it were, I'd be making a lot more money, right? I think
12 everybody got what they needed out of their systems, I hope.
13 So let's get down to how to resolve this particular issue.

14 If I understand things correctly, what Ms. Hampton
15 wants is information from September to January, '17 to '18, so
16 this four-month period, any communications between herself and
17 these three individuals, is that right?

18 MS. KATZ: Yes. If you --

19 THE COURT: Hold on.

20 MS. KATZ: Oh, I apologize.

21 THE COURT: Is that right? Is that number 1?

22 MS. KATZ: That's one, absolutely.

23 THE COURT: Okay. The next thing that she's looking
24 for is communications between these three individuals about her
25 or involving her over that four-month period, right? So it

1 would be, you know, talking about whether they were going to be
2 hiring her and then talking about whether they would not be
3 hiring her, so that involve her, is that right?
4    MS. KATZ:  Absolutely, Your Honor.
5    THE COURT:  Okay.  Then it seems if there is any
6 communications between any of these individuals and any of the
7 defendants about Ms. Hampton, is that right?
8    MS. KATZ:  Yes.  Just to clarify because the
9 defendants are entities and not individuals, we tried to
10 clarify that on page 10 of our motion which was an email
11 outlining, for example, the specific individuals, i.e.,
12 Alderman Quinn, Kristen Bauer, so that there was some reference
13 to make it easier for them to look.
14    THE COURT:  All right.  So what I would like you to do
15 is provide a list to Mr. Groff with those.  So not as an
16 example, but a list.  So when you are going to search, because
17 it's all being done electronically obviously, you know, here
18 are the search terms, you know, Alderman Quinn and Individuals
19 A, B, and C, so you're not looking for the universe.  You are
20 actually looking for specific communications between these
21 three individuals who have been subpoenaed and the specific
22 individuals associated with defendants about Ms. Hampton.
23    MS. KATZ:  Correct.  We did provide those names, and
24 I'm happy to do it again, Your Honor, just for clarification or
25 to avoid any confusion.

1 THE COURT: Okay. So have I missed anything?

2 MS. KATZ: One thing, Your Honor.

3 THE COURT: Okay.

4 MS. KATZ: So we also asked in same four-month time
5 period for calendars in electronic form relating to those three
6 individuals, but we made clear it would represent, for example,
7 a meeting with each other regarding the 5th District race or a
8 meeting with Alderman Quinn. I'm not saying these exist. But,
9 for example, a meeting with Johnae Strong, we said that we are
10 not looking for anything regarding personal appointments.
11 Anything having to do with things that have nothing to do with
12 Ms. Hampton, those could all be redacted, blacked out. We're
13 just looking for any calendars that would say at 2:00 o'clock
14 we have a meeting at the State Capitol, if they exist.

15 THE COURT: Well, the thing is, as I think you know
16 and certainly from my experience, I think asking for the
17 calendars is overbroad. All right? You're not going to get
18 the substance of any meeting from a calendar, right? So say
19 Ms. Tai met with Alderman Quinn on a specific date in November.
20 The fact that she met with him in November doesn't tell you
21 anything other than she met with him in November. It doesn't
22 tell you what she met with him about, if it was anything
23 related to Ms. Hampton, and the reality is most people are not
24 going to write in a calendar entry: Meeting with Alderman
25 Quinn to talk about how we can screw over Alaina Hampton.

1  MS. KATZ: Of course, Your Honor, and I'm not
2  suggesting otherwise.
3  THE COURT: Right? That's just not going to be there.
4  MS. KATZ: And we have exchanged already in this case
5  calendar entries which have provided relevant information. For
6  example, we have the specific time frame that we identified
7  with the text messages. If before meeting with Mr. Conway to
8  discuss whether she was on the outs there was a meeting
9  documented in Ms. Gates' calendar that says "meeting with
10 Alderman Quinn," I could then ask Mr. Quinn during his
11 deposition: Did you meet on such-and-such date with this
12 person? Did you discuss Ms. Hampton?
13 That's where it becomes relevant.
14 THE COURT: I suppose, but that's like level 2,
15 really, right? So let's -- I mean, we haven't gotten even
16 level 1 responsiveness yet, right?
17 MS. KATZ: That is correct.
18 THE COURT: So I would say let's hold off on the
19 calendars. Get the communications first, and then you can go
20 back if there's specific dates that you want them to search as
21 opposed to pulling a calendar for each of them for four months
22 and then Mr. Groff has to go in and redact all of this
23 information out of the calendars to provide you with a very
24 limited and small set of information. To me, the benefits are
25 not outweighed by the costs, right?

1         MS. KATZ: Understood.

2         THE COURT: If after you've received the
3 communications there are specific dates that you want to ask
4 for, that's a much more reasonable and a much easier thing to
5 accomplish. So, you know, if you're asking for a calendar
6 entry for September 17th to the 21st, you know, a few-day
7 period around a particular communication, that is much more
8 reasonable and much more related to what you're looking for
9 than just asking for a four-month period of calendars.

10         MS. KATZ: Understood.

11         THE COURT: Make sense, Mr. Groff?

12         MR. GROFF: Yes. Just to be clear because I actually
13 wasn't clear on this before today, my clients are not to be
14 producing or are not to produce material just about Johnae
15 Strong and not about Alaina Hampton.

16         THE COURT: No, no, no, no, no, no.

17         MR. GROFF: Okay. So we won't be producing that then.

18         MR. KULWIN: If it relates to Ms. Hampton, if it
19 relates to Ms. Hampton, yes.

20         THE COURT: Yes, I mean, but simply about Ms. Strong,
21 no.

22         MS. KATZ: No.

23         MR. KULWIN: And we told them that.

24         MR. GROFF: I mean, I tried to clear that up with them
25 repeatedly, but we got it cleared up now so that's good.

1  THE COURT: Okay. So when do you think you
2 can respond? Now that we know what the contours are, when do
3 you think that you can respond?
4  MR. GROFF: I would say two weeks, assuming that my
5 client reps are available to work on this.
6  THE COURT: All right. I was going to give you 30
7 days.
8  MR. GROFF: Great.
9  THE COURT: Does that make sense, Mr. Kulwin?
10  MR. KULWIN: Whatever you say, Judge.
11  THE COURT: Okay. I do think -- yes, we've got fact
12 discovery that doesn't close until December 17th.
13  MR. KULWIN: The 23rd, but who's counting.
14  THE COURT: Oh, you're right, the 23rd. Sorry.
15  MR. KULWIN: Even a blind squirrel finds a nut
16 sometimes, Judge.
17  THE COURT: All right.
18  MS. KATZ: Judge, just so there's no confusion, if the
19 respondents are making an attorney-client or any sort of
20 privilege that they think is relevant, they need to produce a
21 privilege log or at least identify the documents and assert the
22 appropriate privilege.
23  MR. KULWIN: Within the same time period.
24  THE COURT: Yes.
25  MS. KATZ: Okay. Thank you, Judge.

| | |
|---|---|
| 1 | MR. GROFF: We'll make a log. |
| 2 | THE COURT: Yes. |
| 3 | MR. GROFF: If we turn up anything. |
| 4 | MS. KATZ: And there might be nothing. |
| 5 | THE COURT: I don't think that there's going to be |
| 6 | anything. If they're talking to each other about whether or |
| 7 | not to hire Ms. Hampton or talking to Ms. Hampton about, you |
| 8 | know, what the job would entail and their interest, I highly |
| 9 | doubt that there's going to be anything that's privileged. But |
| 10 | because it's going to be an electronic search, you know, what I |
| 11 | would like is by tomorrow that you provide a list of the |
| 12 | specific individuals -- |
| 13 | MS. KATZ: Individuals, absolutely. |
| 14 | THE COURT: -- associated with the defendants. Okay? |
| 15 | MS. KATZ: I will resend that today. |
| 16 | THE COURT: Okay. Anything else we need to take up? |
| 17 | MR. GROFF: I don't think so. |
| 18 | MR. KULWIN: I assume the rest of our motion for |
| 19 | sanctions is denied, unfortunately. |
| 20 | THE COURT: Yes. |
| 21 | MR. KULWIN: Thanks, Judge. |
| 22 | MS. KATZ: Thank you, Judge. |
| 23 | THE COURT: We've got it. It's resolved -- |
| 24 | MS. KATZ: We'll move forward. |
| 25 | THE COURT: -- and we're moving forward. |

```
1         MR. KULWIN:  I'll do my best.
2         MS. KATZ:  Thank you, Judge.
3         THE COURT:  All right.  You're welcome.
4     (Proceedings concluded.)
5              C E R T I F I C A T E
6         I, Patrick J. Mullen, do hereby certify that the
7  foregoing is a complete, true, and accurate transcript of the
8  proceedings had in the above-entitled case before the Honorable
9  SARA L. ELLIS, one of the judges of said Court, at Chicago,
10 Illinois, on May 30, 2019.
11
12                          /s/ Patrick J. Mullen
                            Official Court Reporter
13                          United States District Court
                            Northern District of Illinois
14                          Eastern Division
```